IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

September 21, 2010

RE: AKILAH SMART V. J. BARRY JOHNSON, ETAL
CA No. 10-1706

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Hart, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: LINDA V. JERRY, Deputy Clerk

cc: SMART
DUNLAVEY

Courtroom Deputy to Judge Savage

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| AKILAH SMART | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| J. BARRY JOHNSON, et al. | : | NO. 10-1706 |

REPORT AND RECOMMENDATION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE
DATE: 9/20/10

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by an individual currently incarcerated at the State Correctional Institute at Pine Grove, in Indiana, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

I. Factual and Procedural Background

Following a jury trial which took place in the Court of Common Pleas for Philadelphia County, Smart was convicted on June 19, 2003, of attempted murder, aggravated assault, and possessing the instruments of a crime. Commonwealth v. Smart, December Term 2002, No. 0778 (C.C.P. Phila. June 16, 2005), attached to Commonwealth's Response as Exhibit A, at 1. Smart was found to have shot an individual named Sharif Owens outside a community center as he tried to break up a conflict between Smart and another individual, Wayne Robinson. Apparently, Smart had been beaten up the night before by Wayne Robinson and his brother Eddie. As a result of the shooting, Owens became paralyzed from the chest down, and had a leg amputated.

On September 18, 2003, Smart was sentenced to 12 1/2 to 25 years incarceration. Id. Initially, Smart did not file a timely direct appeal. Id. However, a PCRA petition was granted by the Court of Common Pleas, and Smart's appeal rights were reinstated *nunc pro tunc*. Id. In his *nunc pro tunc* direct appeal, Smart argued that:

(a) The trial court erred in denying a motion for mistrial after the testimony of witness Dominique Sutton, despite the occurrence of a Brady violation;

(b) The trial court erred by permitting the testimony of a witness as to a statement made by Smart's sister, under a hearsay exception;

(c) The trial court's expression of dissatisfaction with defense counsel's cross-examination of Officer Robin Williams deprived Smart of a fair trial;

(d) The trial court erred in failing to grant Smart's motion for judgment of acquittal;

(e) The trial court erred in denying the defense motion to prevent the Commonwealth from vouching for its witnesses during closing;

(f) Smart's sentence was illegal under Blakely v. Washington, 124 S. Ct. 2531 (2004), which was decided between the time of sentencing, and the filing of Smart's appeal;

(g) Smart's sentence was excessive; it was unduly harsh and oppressive and did not reflect the circumstances of the crime or Smart's history; and

(h) Trial counsel was ineffective, in that he drafted a motion for reconsideration of sentence but never filed it with the court.

Id. at 1-7.

The Superior Court denied Smart's direct appeal. Commonwealth v. Smart, No. 70 EDA 2005, 905 A.2d 1049 (Pa. Super. June 8, 2006). The Pennsylvania Supreme Court denied *allocatur*. Commonwealth v. Smart, 912 A.2d 129 (Pa. Nov. 29, 2006).

Smart then filed a second petition for collateral review under Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541 *et seq.* Commonwealth v. Smart, CP-51-1207781-2002 (C.C.P. Aug. 29, 2008), attached to Response as Exhibit C at 2. The PCRA court appointed counsel. Id. In his petition, Smart argued that he received ineffective assistance of counsel in that trial counsel was "unaware of documents he had in his file given to him by the Commonwealth", and that sentencing counsel was ineffective for not filing a timely motion to

reconsider sentence. Commonwealth v. Smart, Id. The Common Pleas Court denied this petition without a hearing. Id.

Smart appealed the denial of his PCRA petition to the Superior Court, reiterating his claim of counsel ineffectiveness, and also arguing that the Superior Court erred in failing to hold an evidentiary hearing. Commonwealth v. Smart, No. 2001 EDA 2008 (Pa. Super. Aug. 6, 2009), attached to Response as Exhibit D, at 4. The Superior Court, however, affirmed the dismissal of the petition on August 6, 2009. Id. Once again, the Pennsylvania Supreme Court denied *allocatur*. Commonwealth v. Smart, 989 A.2d 916 (Pa. Feb. 12, 2010).

Smart filed the present petition for habeas corpus relief on April 12, 2010. In this petition, he argues that:

(1) Detective Robert Kane violated his rights under Miranda v. Arizona, 384 U.S. 436, 476 (1966);

(2) Trial counsel was ineffective in (a) failing to have ballistics reports; (b) failing to produce witnesses Smart identified; (c) being unaware of "surprise witnesses" and (d) "failing to have full discovery at trial;"

(3) Sentencing counsel was ineffective for failing to file a timely motion to reconsider sentence;

(4) Appellate counsel was ineffective for failing to set forth in the appellate brief a "separate, concise statement of the reasons why appellate review should be granted for the challenge of the discretionary aspects" of the sentence; and

(5) His right of appeal was denied. (The basis for this claim is unclear, as will be discussed further below).

Petition at ¶ 12.

II. Discussion

A. Smart's Miranda Claim

Smart has never before presented a court with the argument that there had been a violation of his rights under Miranda v. Arizona, 384 U.S. 436, 476 (1966). He concedes this in his petition at ¶ 13.

Because it has not been raised before a state court, Smart's Miranda claim is unexhausted. A federal court will not address the merits of claims presented in a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995); Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994).

This requirement is based on rules of comity between state and federal courts. The United States Supreme Court has said:

> State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. This rule of comity reduces friction between the state and federal court systems by avoiding the "unseem[liness] of a federal court's overturning a state court conviction without the state court's having had an opportunity to correct the constitutional violation in the first instance."

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), citing Rose v. Lundy, 455 U.S. 509, 515-516 (1982).

Moreover, the Miranda claim is also procedurally defaulted. The procedural default barrier precludes a federal court from reviewing a state petitioner's habeas claim if the state court would deem that claim defaulted under an independent and adequate state rule. Coleman v. Thompson, 501 U.S. 722, 729 (1991); Carter v. Vaughan, 62 F.3d 591, 595 (3d Cir. 1995).

4

Undoubtedly, the Pennsylvania courts would deem Smart's Miranda claim defaulted. Smart cannot raise it in a new PCRA petition, because the PCRA statute requires a petition to be filed within one year of the date the petitioner's judgment became final. 42 Pa.C.S.A. s 9545(b). Smart's judgment became final 90 days after the Pennsylvania Supreme Court denied allocatur on November 29, 2006.

To survive procedural default in the federal courts, a petitioner must demonstrate either (a) cause for the default and actual prejudice arising from it, or (b) that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, supra, at 501 U.S. 750. To establish a fundamental miscarriage of justice, the petitioner must demonstrate actual innocence. Schlup v. Delo, 513 U.S. 298 (1995).

Smart maintains that this claim was defaulted because, although he raised it in his original, *pro se*, PCRA petition, his assigned counsel believed it was meritless and did not include it in the amended petition he drafted. This, however, does not constitute adequate "cause" for the default, under Coleman. As the Court of Appeals for the Third Circuit has summarized the United States Supreme Court case law:

> The Supreme Court has held that "cause" will "ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478 (1986). Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Id. ... "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486.

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir.), *cert. denied*, 537 U.S. 897 (2002).

5

Certainly, Smart has not shown actual innocence. Therefore, his default cannot be excused, and the Miranda claim cannot be considered here.

B.     Ineffective Assistance Of Counsel

In Strickland v. Washington, 466 U.S. 688 (1984), the United States Supreme Court set out the Constitutional standard for ineffective assistance of counsel:

> First the defendant must show that the counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 687.

Strategic choices made by counsel are presumed reasonable. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected ... if they are based on professional judgment." Strickland v. Washington 466 U.S. at 681. The standard used in the Pennsylvania courts to assess ineffective assistance of counsel is the same as that set forth in Strickland. Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987).

1.     Trial Counsel

a.     Failure to Identify Surprise Witness and Failure to Obtain Discovery

Smart claims that his trial counsel was ineffective in a number of respects. His claim that counsel failed to identify a surprise witness, and the claim that counsel failed to obtain discovery are both related to the testimony of Dominique Sutton. Sutton was a friend of Owens', and an eye-witness, who testified that he was standing a few feet away from Owens when Smart shot him. Notes of Testimony, June 16, 2003, at 272-273. Notably, Sutton also testified that

6

Smart had returned to the community center on the evening prior to the shooting, after his fight with Wayne and Eddie Robinson, and had displayed a gun. Id. at 264-268.

After Sutton's testimony, Smart's lawyer moved for a mistrial, on the basis that he had no notice that Sutton would testify, and had never before heard that Smart returned to the community center after the fight, with a gun. Id. at 280. The prosecutor responded that she had mentioned Sutton to counsel verbally although his name was not printed in the "49" arrest report. Id. at 282. Counsel never received a copy of a "483" witness statement made by Sutton, because Sutton was never interviewed by the police. Id. at 282-83. The prosecutor said that she, also, was surprised by Sutton's testimony that Smart wielded a gun on the night before the shooting. Id. at 282.

The trial judge said that, if it was properly disclosed, the testimony about Sutton displaying a gun would be admissible, with "no ifs, ands, or buts about it", but added: "the only issue I can see here is: Is he so surprised at what transpired that he is unable to proceed further?" Id. at 285. Ultimately, trial counsel suggested: "How about if I cross-examine [Sutton] tomorrow, and I will speak with my client now?" Id. at 289. The judge agreed, and dismissed the jury for the day.

The next morning, the prosecutor told the judge at sidebar that Dominique Sutton had been mentioned as a witness in the 483 of Brandon Hough, another trial witness. Trial Transcript, June 17, 2003, at 2. Then this interchange occurred:

> DEFENSE COUNSEL: I never had gotten the 483s in this case. ... I never got the 483s. I will not make a big deal about it but I never got those. The only thing I got was the 49 which you gave me yesterday ... and that 49 included only the statement of Sharif Owens and that was a two page document and that was it. That is all I have ever gotten with respect to the case and I thought that is all there

7

was. It referred to a 483 in there. It does refer to it. I thought I would get it. No big deal.

JUDGE: When you didn't get it, you should have brought it to the attention of the Court. You should have said, Judge, I don't have all of my Discovery.

PROSECUTOR: First of all, Your Honor, I provided to Counsel anything he wanted. He never made any sort of Discovery request to me.

Id. at 3-4.

After this sidebar conference concluded, the trial proceeded. Although the trial judge never formally ruled on the defense motion for a mistrial, counsel did not raise the issue again.

In ruling on the appeal in Smart's PCRA petition, the Superior Court held that counsel had not been ineffective for failing to find out about Sutton or make a formal discovery request. The Superior Court wrote that, even if counsel's pre-trial preparation was "lacking", Smart had not demonstrated prejudice. Commonwealth's Exhibit D, supra, at 7. It wrote that Sutton's testimony was in many ways cumulative. Therefore, the outcome of the trial was not likely to have been different even if counsel had obtained full discovery, and found out about Dominique Sutton in advance of trial. Id. at 7-8.

The federal habeas statute only permits a federal court to grant relief on a claim which has been adjudicated by a state court if the state court's adjudication (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Here, the state court's decision was largely reasonable. In a sense, the court begged the question by pointing out that *most* of Sutton's testimony was cumulative; the issue was whether

8

Smart was prejudiced by the part that was *not* cumulative – no other witness testified that Smart returned with a gun to the community center on the day before the shooting.

Nevertheless, the Superior Court reasonably concluded that Smart had not shown prejudice. Owens, the victim, testified clearly that Smart shot him. Trial Transcript, June 16, 2003, at 229-30. Eyewitnesses Brandon Hough and Ron Davis testified that they were only a few feet away from Owens when they saw Smart shoot him. Trial Transcript, June 17, 2003, at 15 (Hough) and 71-74 (Davis). George Kitchell, who worked at the community center, did not see the actual shooting, since he ducked down in his car when he saw the gun, but he testified that the shooter wore a red jacket, which is what Owens, Hough and Davis described Smart as wearing. Trial Transcript, June 17, 2003, at 90. Moreover, Kitchell testified that, in the minutes immediately after the shooting, Hough and Davis told him that Smart was the shooter. Id. at 92, 93. The only witnesses who testified that Smart did not shoot Owens were Smart, himself, and his mother. Trial Transcript, June 18, 2003.

Thus, even if Sutton had not testified at all, the evidence against Smart would still have been extremely strong. Smart has not suggested any specific way in which he was prejudiced by any failure by his trial counsel to identify Sutton as a witness or to obtain complete discovery. None is immediately apparent. In fact, the judge agreed to dismiss the jury for the day after Sutton's testimony, giving Smart's lawyer over night to prepare to cross-examine him. Thus, Smart has not met the second Strickland requirement of showing prejudice.

b. <u>The Ballistics Report</u>

Smart also argues that trial counsel was ineffective in failing to obtain a ballistics report prepared by an Officer Faber, who testified as a ballistics expert that a bullet removed from Sharif Owens' body was fired from either a .38 or a .357 revolver. Trial Transcript, June 18, 2003, at 37-40. This corroborated the testimony of eye-witness Dominique Sutton, who testified that Smart shot Owens with a .38. Trial Transcript, June 17, 2003, at 52.

In the appeal of Smart's PCRA petition, the Superior Court decided that, even if trial counsel had erred in failing to obtain the ballistics report sooner, Smart was not prejudiced "since there was no evidence linking the bullet to a specific gun or to a specific individual", and also because Smart had not suggested how Officer Faber could have been impeached if trial counsel had known of him earlier. <u>Commonwealth v. Smart</u>, Commonwealth's Exhibit D, <u>supra</u>, at 8. The Superior Court concluded: "Given the overwhelming evidence of Appellant's guilt, we find nothing which demonstrates that Appellant was prejudiced by trial counsel's actions with respect to the ballistics report." <u>Id</u>.

As I pointed out, the ballistics testimony did tend to confirm Dominique Sutton's description of Smart's gun, so to that extent, it did "link the bullet to a specific individual." However, it is true that Smart has not suggested how an earlier awareness of the ballistics report could have helped his trial counsel impeach Officer Faber's fairly minimal and straightforward testimony as to the size and features of the bullet removed by the hospital from Owens' body. Further, as noted above, the Superior Court justifiably described the evidence of Smart's guilt as "overwhelming", given the three eyewitness identifications made at trial – one, by the victim – and the partial identification by a fourth witness, George Kitchell, who also confirmed that Smart was identified as the shooter immediately after the shooting took place.

10

c.   Failure to Produce Witnesses

Smart maintains that his trial counsel was ineffective for failing to call certain witnesses. This claim was never raised before a state court, and is therefore unexhausted and procedurally defaulted. Moreover, Smart has not identified the witnesses he wanted counsel to call, or even explained what these individuals would have testified. Vague and conclusory allegations in a habeas petition may be disposed of without further investigation by the District Court. U.S. v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

2.   Sentencing Counsel

According to Smart, the counsel who assisted him at sentencing was ineffective in failing to make a timely motion for reconsideration of his sentence as excessive. The Superior Court, in ruling on Smart's PCRA petition, rejected this claim, maintaining that Smart was not prejudiced by his counsel's failure, because any such petition would have been frivolous. Exhibit D at 9-10.

In essence, said the Superior Court, Smart wanted his counsel to ask for a reduction of sentence based upon mitigating factors which the sentencing court had already considered. Id. at 10. It wrote:

> The record in this matter reflects that the prosecution had requested an aggravated range sentence in this case but the trial court sentenced Appellant squarely within the standard range. Despite this, Appellant claims that counsel should have filed a motion claiming that his sentence was excessive because the trial court failed to properly consider Appellant's previous clean record, his acceptance to college, his prior work history, and his spotless reputation in the community. However the record reflects that the sentencing court was well aware of these factors, specifically stating that Appellant had led a "sterling" life prior to the shooting. [Citation omitted]. The record further reflects that the sentencing court concluded that those factors were outweighed by Appellant's lack of remorse as manifested by the letter that Appellant read to the sentencing court, wherein he proclaimed his innocence, took issue with every piece of evidence offered against him; accused the victim and the other eyewitnesses of being vicious gang members

11

who had concocted a plot against him; and accused the assistant district attorney and the police of violating his rights and deliberately prosecuting an innocent man so that the assistant district attorney could get a pay raise.

Id. at 9-10. The Superior Court then cited state law in deciding that counsel had not been ineffective for failing to file a futile motion. Id. at 10.

The state court's application of state law was not contrary to federal law, since under federal law as well as state, counsel will not be found ineffective for failing to raise a meritless claim. United States. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). Neither was the court's ruling based on an unreasonable determination of the facts. The accuracy of the Superior Court's description of Smart's sentencing is not disputed. For this reason, there is no basis upon which to grant habeas relief on this issue. 28 U.S.C. § 2254(d).

3. Appellate Counsel

Finally, Smart argues that his appellate counsel was ineffective for failing to set forth in his appellate brief a "separate, concise statement of the reasons why appellate review should be granted for the challenge of the discretionary aspects" of his sentence. This claim is unexhausted and procedurally defaulted. As with his Miranda claim, Smart argues here that the reason this claim was not raised in his PCRA petition was that his PCRA counsel believed it was meritless. Petition at ¶ 12(e). As discussed above, even if this is true, it does not constitute the "cause" required by Coleman to excuse procedural default. Cristin v. Brennan, supra. And, as above, Smart has not shown actual innocence. Therefore, this claim cannot be reviewed here.

C.  Smart's "Right of Appeal" Claim

In support of his last claim, that his right of appeal was violated, Smart has written:

> My lawyer failed to submit an appeal on my behalf after sentencing. On 11-30-04 Petitioner's rights were reinstated. On 12/28j/04 a timely notice of appeal was filed (by a different lawyer). On 6/8/06 the Superior Court dismissed the appeal (70 EDA 2005). On 7/3/06 Allowance of Appeal to Pennsylvania Supreme Court was filed on Petitioner's behalf. On 11/29/06, the Petition for Allowance of Appeal was denied. On 2/5/07 Petitioner filed a timely Pro Se Petition under Post Conviction Relief Act. Petitioner obtained court appointed counsel and that attorney (Peter A Levin) filed an amended P.C.R.A. On 1/23/08 (Sentencing Judge Anthony J. Defino retired "in the meantime" and the case was transferred to Judge Pamela Pryor Dembe). The Commonwealth filed a motion to dismiss the P.C.R.A. on 4/3/08. The P.C.R.A. was dismissed on 6/17/08 without a hearing. A timely appeal was filed to the Superior Court on 6/26/08. A timely statement of matters complained of on appeal was filed on 7/7/08 (not 100% of the exact date). The Superior Court denied that appeal on 8/6/09. On 9/8/09, Petitioner's attorney filed a Petition for Allowance of Appeal from the Superior Court to the Supreme Court. On 2/12/10 the Petition for Allowance of Appeal was denied. Now I'm pleading for relief from the Federal Court.

Petition at ¶ 12(j).

I agree with the Commonwealth, which stated in its response that this does not appear to set forth a claim at all, but rather a procedural history. In terms of the denial of a right to appeal, it is true that Smart's trial counsel did not file a direct appeal, but, as Smart himself records, his appellate rights were reinstated, and a direct appeal was ruled on by the Superior Court, which issued a 16-page opinion. Exhibit B to Commonwealth's Response. After that, Smart was able to file a P.C.R.A. petition, and to pursue an appeal of the denial of that petition. See Exhibit D to Commonwealth's Response. It is impossible, therefore, to say what Smart intends in this claim. For that reason, it should be dismissed as vague. U.S. v. Thomas, supra.

13

Rule 72.1. **Failure to file timely objections may constitute a waiver of any appellate rights.**

IV. Conclusion

Based on the foregoing, I make the following:

## RECOMMENDATION

AND NOW, this 20 day of September, 2010, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There is no basis for the issuance of a certificate of appealabilty.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKILAH SMART | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| J. BARRY JOHNSON, *et al.* | : | NO. 10-1706 |

ORDER

TIMOTHY J. SAVAGE, J.

      AND NOW, this      day of     , 2010, upon careful and independent consideration of the petition for writ of habeas corpus, and after review of the Report and Recommendation of the United States Magistrate Judge Jacob P. Hart, it is

    ORDERED that:

    1.     The Report and Recommendation is APPROVED and ADOPTED;

    2.     The petition for writ of habeas corpus is DENIED.

    3.     There is <u>no</u> basis for the issuance of a certificate of appealability.

                                                  BY THE COURT:

                                                  _____
                                                  TIMOTHY J. SAVAGE, J.